Good morning. Good morning. I think it's still morning. Good morning, Your Honor. May it please the Court. My name is Virginia Hoyt. I represent the appellant, State Compensation Insurance Fund. I'd like to reserve three minutes for rebuttal. Okay, we'll try to help you. Thank you, Your Honor. Your Honor, in this case, the District Court found that there was sufficient amount of evidence of a billing fraud scheme, which medical provider fraud had affected workers' comp carriers, injured workers, and ultimately their employers who pay the cost. Counsel, can I just try to cut to the chase? Yes. Even though you have time, it's gonna go away pretty quickly, I think. Yes, thank you. I'm a California lawyer. I've practiced for a long time here, and I know that the State Compensation Insurance Fund's very sophisticated, very big, involves literally billions of dollars over time. You've got very good lawyers. You're one of them, I'm sure. Thank you, Your Honor. And here you have a situation where you have an allegedly rogue lawyer who reached a settlement, but then he was out of the picture and somebody else got involved, and with full knowledge, you settled it again. And it contained the typical California general waiver, cover everybody in the world, 5041, I think it is. And included in that is an allegation about agents. And the District Court said, if I recall it correctly, is that basically the ones that you have problem with, these are all agents of the ZAC entities, and that's the end of the story. Why is that wrong? These are all agents of the ZAC's entities? Yes. Are you talking about the... The people that settled, basically. If I recall correctly, the other party, the ZON, I think did not settle, that was a separate issue. That's correct. So with respect to the ZAC entities, the people who signed with the general waiver provisions included... Yes. Including agents and so on, the District Court says, hey, there may have been some this and that and the other, but you covered everybody here. And you had good lawyers, they had good lawyers. What's to argue about here? Why are we here? Yes, Your Honor. This goes to the broad cause of claim against the ZAC's defendants only, and they entered into the agreement with the representations and warranties, where they stated that they were unaware of any fraud. And when they stated that, the fraud cause of action, I would like to point out, was not negated, not a single element was negated by the ZAC's defendants. Again, I don't mean to interrupt you, but I wanna get to the bottom line. Under California law, with that kind of a situation, the whole purpose of that is, you may have forgotten something, there may be some cause of action. So you wanna be sure that whether it's mentioned or it's not mentioned, unless there's fraud in the entry of the contract itself, it's just done. And the District Court concluded, with good counsel on both sides, everybody thought of everybody and everything. And if they didn't, they threw in 1541, and that takes care of it, because they were here in light of that situation. Because the extrinsic fraud is something that allows the parties, as this court... But how is this extrinsic fraud? This is intrinsic, is it not? Is it at all? Not at all. No. I do believe that the decision by the District Court conflated the two frauds. But in fact, we're talking about Dr. ZAC's state of mind, his knowledge. And State Fund did not have all the evidence, as the court tried to state. If the court had only looked at 2010 and prior evidence, then perhaps he could have been making an appropriate statement. However, he was talking about suspicions, and he was not talking about evidence. The workers' comp judge arbitrator, at page 4831, literally noted that if the medical protocols had been not based on science, but instead for the maximization of profit, then this would be a different story. But that arbitrator found no evidence whatsoever. On the other hand... So you're taking the position... I mean, you obviously thought these people were not good people. You thought they had cheated. There were many, many fraudulent... You claimed that upside one side and down the other. You didn't think these were nice folks. But you nonetheless decided to settle, because there was so much money involved, and the arbitrator didn't necessarily agree with you. So you decided, you're big people. You were able to make a decision. You clearly had to know that there are all kinds of ways for, in quotes, bad people to do bad things. And yet you're saying, well, we didn't think of RICO. So we're right back here again. How could anybody settle anything in California unless they named every conceivable cause of action in the world, whether or not ever thought of, based on your analysis of it? Well, Your Honor, this court's decision, the Facebook case, stated that parties may be skeptical of each other, of their assertions that they're going to make, and they can protect themselves by placing a representations and warranties clause in the agreement as a condition of the agreement. That's exactly what was done here. In fact, I would like to note that... So you're saying that you relied on them saying there was no fraud to be... That was your insurance that there had never been any false billing, even though you had just spent years investigating whether there was false billing? The question is whether Dr. Zaks' state of mind was such that he was aware of this fraud. We did not have evidence until this case that, in fact, Dr. Zaks and Dr. Kahn orchestrated the entire fraud. The clinic workers, the doctors, the undercover agents, none of them would testify until after the criminal case had finished. And in this case, when we conducted discovery, this is when we were able to get the depositions and the declarations showing the actual knowledge of the fraud. I would also note that the court miscited evidence when it talked about the fact that Dr. Zaks and Mr. Roth only met one time. In fact, if you'd look at pages 2355 to 56, that's Dr. Zaks' own declaration, wherein he states that from January 1 of 2006 through the summer of 2009, he attended every hearing in the Workers' Conference meetings, including 18 arbitration hearings. He also was at two settlement meetings, both the July 30th and the October 9th settlement meetings with Mr. Roth and his attorneys, and they had ample opportunity to collude at those points. But you also had ample opportunity to do discovery, as they did with respect to your decision. And as I understood it, after the 2009 settlement, you could have just discovered all of this. There'd been no problem at all. It might have been very expensive, it might have been very time consuming. You could have done it. They wanted to know the way you made your decision and look at your internal purposes, and you decided, no, I don't think so, we don't want to do that. So you reached an agreement. You weren't happy about it, they weren't happy about it, but you reached an agreement. How are we supposed to interpret the fact that you had every opportunity to find out all the things that you are now alleging that you have been poorly done by, and yet chose not to do it? I'm troubled by that. You're smart people. You didn't do this because you were stupid. You made a value judgment. You made a decision that it was worth it to get this thing settled. There was a lot of money involved. You knew you could have done the discovery, they knew they could have done the discovery, and you said, no, no, I don't think so, let's not do that. And this goes to a question of fact of justifiable reliance. Did State Fund rely on the Representations and Warranties Clause, or in fact, did the parties show that we had other reasons to settle, and it was not justifiably reliant? It just defies belief that really smart people like you who felt the way you did about them were going to, in quotes, rely upon the Representations and Warranties. That's humbug. I appreciate the compliments, but let's keep in mind that the whole point of fraud is to deceive. It is to keep it under wraps. It is to hide and prevent other parties from learning this. Because there were criminal charges pending because you had referred it. How can you say you didn't know there was fraud? That means you referred it for criminal proceedings for nothing? The question is whether Dr. Zaks was aware of the fraud. He lived in L.A. in Beverly Hills. The clinics were all in the Central Valley, and the question is, did he know about it or didn't he? Why does it even matter? I mean, why does it matter whether he knew? I mean, if there was fraud and you could refer it for criminal investigation, I mean, if there's fraud, there's fraud, and you could understand why you think whether he had a true appreciation of the circumstances matters. Well, it does matter because the DA did not even charge Dr. Zaks, and so we had no information other than what Mr. Rock might have known. We did not have information about this case. There was one person handling it throughout the years, and he had all of the information. All of a sudden, to expect that State Fund would now have this information subtly in his head because he had it is just not acceptable because he was no longer an agent. You had referred this for criminal investigation. You clearly thought fraud was involved, clearly. So, you know, you had your former employee involved. You could have taken his deposition. I think you did, actually, at one point. Did you ask him about it? Where are the files? Where are all these allegations and so on? I can't speak to that, Your Honor, but I would say that I would find many statements made by this former employee to be questionable throughout the entire matter, but you have to look at it after the fact. That's the whole point of connivance. When they concealed the matter, they knew another attorney was handling part of the case, but they did not invite him to the July 30th meeting. They did not invite him to the October 9th meeting. We have page numbers where it shows that both Mr. Kristof, Mr. Silverman, and even the attorney who was handling these other matters was in negotiation about these other liens, and yet they did not invite him to the meetings because they wanted to collude only with Mr. Rock. But again, counsel, we get back to the point that my colleague mentioned. You referred this to authorities for a criminal investigation. You only do that if you think a crime has been committed. RICO, of course, has a criminal element to it. Given that fact, doesn't it defy belief that you relied upon the representations and warranties in the 2010 settlement? The carriers and workers' comp are required by law to report anything for which they have a reasonable suspicion. It does not mean that all of these cases are going to be prosecuted. It certainly doesn't mean that all of these will result in... But you had a reasonable suspicion that a crime had been committed. A reasonable suspicion does not rise to the level of knowing who committed that crime and how that crime was committed. We learned about the orchestration of that crime in the evidence in this case. It was not available at all until this case. You chose not to go for it because you wanted to settle... Go ahead, then. Sorry. I'm sorry. I wanted to raise a somewhat different point. The claims against the Kahn defendants, am I right that they were dismissed solely on statute of limitations basis? That's correct. And it's our position that as long as they are pursuing money in this scheme, in the RICO scheme, then they are participating. But even more so, Your Honor, there's just filed an inference that can be brought based on the fact that Dr. Kahn had introduced Dr. Saxon Holmes, where they started the Accident and Helpline Clinics. He helped to operate that clinic. He interviewed doctors for that clinic. He attended staff meetings and helped direct... None of that relates to statute of limitations directly. Do I have it right that there were bills sent after the statute of limitations period... Absolutely, Your Honor. That under your allegations were false billings requesting payment, falsely requesting payment, yes? Yes, Your Honor. And it went right through to 2013, and that's in the record. I don't have those page sites, but it is in the record. I would also like to note that there was a very clear concert of action between Mr. Roth and Mr. Silverman when they had this kind of dance as such, keeping very candid with each other as they discussed all these matters, and yet concealing it from anyone else at State Fund. I would note what I was getting at was that a justifiable inference could be made that Dr. Kahn also assisted Dr. Saxon in getting Mr. Roth a job in the later time because Mrs. Lockian, who was very young, he was 30 years old, owned these same kind of companies that Dr. Kahn had previously owned and was a mentor to Mrs. Lockian. At that point, it's very easy to assess that the conversations between the parties resulted in Mr. Roth's employment as directed by a beneficiary of this wrongful settlement. I'd also like to... Yes, Your Honor. I was just gonna ask you, moving to a different issue, were there any bases for rescinding the 2010 settlement agreement? That is exactly what this complaint does, is it acts as notice of rescission of the actual agreement. And that is in Civil Code 1698, if an agreement is fraudulently induced and there is extrinsic evidence to show that, then it can be rescinded and this particular claim provides notice. And the specific intrinsic evidence that you cite is what? There's no intrinsic evidence that I'm talking about, I'm only talking about extrinsic evidence. Okay, what's the extrinsic evidence? The extrinsic evidence would be Dr. Saxon's knowledge of the scheme, the entire scheme, which we did not know he orchestrated until evidence came in this case. It is also his knowledge of the collusion with Mr. Roth in order to have that initial agreement go forward. And it is the connivance, which is very clear by the way they had concealed all their acts from any other member at State Fund, even though they knew another lawyer was involved with some of those liens. And that connivance along with enforcing the wrongful settlement agreement is the essence of connivance. So you have this connivance argument that I think is that the defendants wrongly tried to enforce the 2009 settlement and that forced you into the 2010 agreement. In order to get rescission of 2010 though, don't you have to offer to put things back in the circumstances that they were, which would mean let's go back to arbitration? Did you ever do that? We have never said that we would not go back to the... But I think you have to offer affirmatively. Did you ever offer affirmatively to put things back in the situation they were? Because my understanding is, unless you can point me to something else, that you have to timely offer to put things back in the circumstances they were before the contract you're trying to rescind. And I don't see any affirmative statement from you that's in the record doing that. Well, Your Honor, my understanding is that if they were to agree to rescission, they would give us the $10 million plus interest back. And then, yes, we would be done here and we would be at the workers' company. But as the party trying to rescind, I think you have to make that affirmative offer. Let's go back to arbitration. Let's start this over again. Did you ever do that? It would be, I cannot say absolutely. I would have to check the record. I went through it quite meticulously. I mean, they made this argument in their brief, so it's not like it's coming out of nowhere. Well, our answer was that this case would be dispositive of the issues. If it turns out that the liens were fraudulent, then in fact, they have no right to pursue those liens at the WCAB. But if they are not fraudulent, then that is something that the court, you know, then yes, we would be back there if they were to agree to rescission. But it doesn't change the fact, as my colleague mentioned, that under the California law, in order to seek rescission, you have to make the offer to return things to the position ab initio. We would absolutely offer to agree. What you did do, did you make that offer? What they were asking us to do was not simply that. They were asking us to go back to the same stipulations and this and that, the other thing. They practically wanted us to hire Mr. Roth back again in order to be in the same position as it was. I take it your answer is that you did not provide a direct written demand to rescind the 2010 offer and return to everything ab initio. I believe that was understood. Well, I cannot absolutely state that because I do not know exactly what that might be in the record. You certainly didn't give one in writing to that effect, right? Not to my knowledge. It was my understanding, our attorney said that it was this matter, this case, would be dispositive of the issues. I did want to just mention the last point, which was... Do you want to save any time? It's up to you. Oh, I thought that I had a little time before. Okay. You have a minute and 38 seconds. All right. Counsel, how are you all going to do this? Just one of you? Okay, thank you. Your Honor, I'm Glenn Summers. I represent the Sachs defendants. Our intention was that I would attempt to address all of the court's questions. However, if there are specific questions... No, I have a question for the Kahn defendants. In that case, your Honor, I would direct you to Mr. Chorbargian. All right. Good morning, your Honor. Vace Chorbargian for the Kahn defendants. So, as I understand it, the claims against your clients were dismissed solely on statute of limitations grounds? That's incorrect, your Honor. That's incorrect? That's incorrect. Okay. Tell me what's correct then. My client has been sued for... The cause of action against him are for racketeering, nothing else. Dr. Sachs is not sued under state common law fraud case. And the case that he has been sued under is that somehow he had colluded with Dr. Sachs and Mr. Roth in getting a settlement for Dr. Sachs by way of Mr. Roth, and for that, he had somehow gotten a job for Mr. Roth at Global Holdings. That's the case against Dr. Kahn. No, but what was the ground on which the district court dismissed the claims against your clients? District court, I have the order from Judge Carney, basically says if there is insufficient evidence that Roth was involved in this alleged conspiracy, the illicit enterprise, that you cannot have a racketeering case against Dr. Kahn. In addition to that, there's a statute of limitation problem as well. I see. All right. Just addressing the statute of limitations issue, why is there a statute of limitations problem? There were bills sent within the prescribed period that asked for payment. Again, Your Honor, if I may address the statute of limitation issue. If you look at the complaint, it alleges basically this racketeering against several entities. Only one of those entities had ever done business with Dr. Sachs and state fund in Central Valley, which is Physicians Mobile Medical Group. None of the other entities had anything to do with it. It's part of the record, number one. At the time that they had done business in Central Valley was between 2002 and 2005. They were out of business in 2005. In 2006, there was a consolidated action filed by state fund against Dr. Sachs, Dr. Kahn, and some other entities as well for various allegations in regards to unnecessary medical treatments and so forth. That case is where it puts unnoticed state fund, and I believe Ninth Circuit follows this rule, which is the injury, when is it discovered? When did they know or should have known that there's an injury? In 2006, state fund basically made the allegation in a verified complaint in the consolidated action that there is some fraud out there, and we want to prove this. And we have nothing in regards to Dr. Kahn until 2012 when this racketeering case comes up where there's a settlement in between Dr. Sachs and state fund, and somehow Mr. Roth ends up at Global Holdings where Dr. Kahn had gotten a job after his businesses went into receivership as medical director. And somehow they say, oh, well, all of this is a collusion and all of this is somehow a fraud that has been perpetrated on state fund to get Dr. Sachs money and Mr. Roth a job. Maybe I'm misremembering, but I thought there were allegations that the Kahn defendants submitted new bills within four years preceding the lawsuit. Are you saying that was not alleged? It is not, Your Honor, and if I may somehow go back a step and perhaps put a timeline for the court. You cannot redo that. It's a consolidated action. It stops it there. What they're alleging right now in this appeal, and it's something new that they have come up with, is that in 2011, a collection case on behalf of a third party, some sold liens unrelated to this, a lawsuit was filed against state fund for unpaid bills. And they're alleging that that somehow revives those 2005 old claims because it had to be submitted that. And Judge Carney found that it doesn't, and obviously it doesn't. There is no tolling. I think this Ninth Circuit has already ruled in that in racketeering cases, you cannot have an equitable tolling. So you have to actually look at when did they know or when should have they known. All right. That's very helpful. Thank you. Thank you, Your Honor. Any other questions for Kahn defendants? Again, Glenn Summers for the Zacks defendants. Let me start with Judge Friedland's questions about the issue of rescission and whether state fund has offered to put the Zacks defendants back in the position they were in, status quo ante. State fund below categorically refused to do so. We filed a counterclaim for declaratory judgment, and as part of that, we specifically alleged that if they got rescission, they would have to cooperate in restoring us to the status quo, that is going back to arbitration. They denied that allegation. In addition, we had a meet and confer prior to filing our motion for summary judgment. And I, I was on the call, I specifically asked Ken Julian of Manat Phelps, who was then representing state fund, if they would agree that if they prevailed in seeking rescission, we went back to arbitration with Judge Seamers. And they said no. And that's reflected in the record in a declaration by Mr. Murphy, who was also on that call and was counsel for state fund below. What's the EER on that, please? I do not have it handy, but I will find it. It is cited in our brief, Your Honor. I will find it by the time argument's over. Thank you. Please. Now, there's a reason why they didn't want to go back to Judge Seamers. They had lost on substantially all of the claims of underlying billing fraud that they want to assert in this RICO case. If I might, just quote, these are in the record, but not, not quoted in our brief. Judge Seamers had already ruled on their argument that the Zach's defendants had provided unnecessary, unnecessary treatments. What did Judge Seamers hold? Quote, again, there is no hard evidence of the provision of unnecessary medical or chiropractic care. That is at ER 4836. On the issue of assembly line medical care, Judge Seamers ruled there is no evidence to support this conclusion. That's at ER 4831. On the issue of quotas and pressure on the doctors, he again found that there was no evidence of any violation of law. That's at ER 4834. And Judge Seamers concluded that what State Fund had come up with was, quote, a hodgepodge of testimony, close quote, from some, quote, disgruntled employees. And that none of it, none of the testimony from those disgruntled employees rose to the level of any violation of law. They had lost on every single issue going to the question whether they were going to have to pay the Zach's defendants. The handful of issues that remained only went to the quantum of damages. They went to whether certain types of treatments were myofascial release or were massage, whether certain types of treatments were work conditioning or group exercise, which have different billing codes and different billing rates. So they had lost on everything that really mattered. The only question was how much they were going to lose. And under the Zach's defendants analysis of the claim, State Fund faced $21 million in liability plus statutory, including statutory interest, but not including attorney's fees and some of the other penalties that they could have been subjected to. They did not want to go back to Judge Seamers for a reason. And what they seek to do here is fundamentally unfair. They have now litigated with the Zach's defendants for 15 years. They systematically refused to pay the Zach's defendants' bills, putting them all out of business by 2005. They then put them through the wringer in fighting every single claim, tooth and nail, in the Workers' Compensation Appeal Board until they lost, lost, lost with Judge Seamers. The Zach's defendants incurred millions of dollars in litigating those cases and prevailed right down the line. Then Judge, Mr. Roth settled, and they investigated for six months. They brought in the law firm of Sun and Shine, Nash and Rosenthal, now Denton's. They interviewed Mr. Roth three separate times, Sun and Shine, his supervisor, Larry Kukovitz, and another lawyer, Bob Dickinson. They, they sat him in wounds and treated him like a dog and interrogated him. They made him provide written chronologies of everything that had happened. And after six months of investigating the issue, and not only investigating, but for six months they had their claims department scrutinize the claims and value them. And they performed, they created detailed sheets figuring out what they owed. It finally dawned on them that the deal that, that Bruce Roth had struck was a good deal, that they had settled for less than 50 cents on the dollar after losing on liability in the arbitration. By the way, the ER site for the Murphy Declaration is 5013. So, going now to Judge Smith's question, where in April of 2010 they decide to settle again. They settled with their eyes wide open. As, as the court has pointed out, they had made criminal referrals of the Zach's defendants, which had resulted in some indictments, all of which were dismissed by the Superior Court. All of them dismissed. They had pursued their own investigations. They had fought in the Workers' Compensation Appeal Board. They knew everything about the underlying liens that they know now. Can you, can you, they of course say there was extrinsic evidence. Can you give us any clue as to what that might be? You told us what they knew, what they had investigated. What was the alleged extrinsic evidence? There is no alleged extrinsic evidence. None whatsoever. The, the underlying billing fraud all related to events that occurred in the early 2000s, which had been fully developed in the arbitration. They were in possession of all that information. Not just Bruce Roth, but other folks at SCIF because he had other lawyers working on the case. He reported on the case. He actually met and presented on the case to the Board of Directors of State Fund on a monthly basis about the case. As to the conduct with Bruce Roth in 2009, they knew all about that. The minute they learned about the settlement, the original settlement, they relieved him of all duties and they put him through the wringer trying to figure out what happened. They pulled his litigation files out of his office. They went through his emails. They went through his telephone records. They, Bob Dickinson, who was one of the people that interviewed him, said that he suspected either that Mr. Roth had essentially panicked or that he had engaged in corruption was the word he used. So they were on full notice. And when they signed the, the April 2010 settlement agreement, it's interesting. Dr. Zaks and Zaks' defendants didn't, didn't warrant and represent that there never was anything fraudulent. They represented and warranted that there was no fraud in connection with, quote, this agreement. No fraud addressing, that's the April 2010 agreement. What they are trying to do is, I don't want to say they're trying to bamboozle the court, but they have thrown out very loose language saying that there are representations that there never was any fraud. That's not what the representation was. It was that there was no fraud, duress, or coercion in connection with the April 2010 resettlement agreements. Now, the, the settlement agreements and the releases take care of the Zaks' defendants, but there's, there's the overarching issue that Judge Carney addressed first in his summary judgment decision, which is that there simply was insufficient evidence for a reasonable jury to find any sort of collusion between the Zaks' defendants and Mr. Roth and or the Kahn defendants. And that negates the claims against all of the defendants here. The, keep in mind, there was three years of very invasive discovery. What's important here, Your Honors, is that State Fund, in light of the- Counsel, just, just for one second here. Yep. Your opposing counsel would say, well, that's our point. Judge Carney was involved in fact-finding. He shouldn't be doing that. His evaluation, whether there was enough evidence, that shouldn't have happened. I suppose your answer would be, well, a judge can always override the jury because if there's not enough evidence, there's not enough evidence. So you're saying he kind of did it in advance? No, Your Honor. He properly performed his gatekeeping role in determining whether to allow the case to go to a jury. It was not for Judge Carney to weigh the evidence or to decide who was right or who was wrong, and he did not do that. Keep in mind, Judge Carney initially dismissed the case on the basis of the releases. They then pleaded around that. And he allowed them, in light of the gravity of their allegations, he allowed them to take incredibly burdensome discovery. They issued, State Fund issued 137 third-party subpoenas. They obtained the bank records of all the defendants, all of their banks and financial institutions. They got their phone records. They got their payroll services information. And they found no evidence of any communications between Dr. Zaks and Bruce Roth that were, you know, there were no secret e-mails, no secret messages, no secret meetings. There was no evidence of any unexplained withdrawal by the Zaks defendants or any unexplained deposit of money by the Roth, by Mr. Roth. They found nothing. And having forced Dr. Zaks to spend $6 million in the district court just to get through discovery, Judge Carney correctly determined that enough was enough. He had given them plenty of latitude to pursue their claims, and they had come up with nothing. And he properly exercised his gatekeeping ruling, saying that there wasn't on the totality of the evidence. He carefully went through the evidence. He gave us a full day in the district court to go through the evidence and gave them every opportunity to explain their case. But in the final analysis, he simply concluded that on the totality of the evidence, there wasn't enough for a reasonable jury to find collusion. And that is an unremarkable conclusion, a very conscientious decision by a very able and thoughtful district judge. And they've come up with nothing to undermine that conclusion. The deeper you look at this evidence, the more clear it is that none of state funds' allegations make any sense. It made no sense for Mr. Roth to give up a 20-year career where he was a leading figure in fighting fraud. For what? To get a job at a little Glendale company for less money after being disgraced? It made no sense that a guy that owned that business, Mr. Salakian, would jump into a RICO conspiracy to give him a job. Again, none of this made any sense, and there was no evidence to support it. Did Judge Kearney express any concern about the extreme nature of what had occurred here? In other words, what state funds had done in this situation? Judge Kearney has awarded the Zacks defendants their attorney's fees, Your Honor. How much are those at this point? I forget the exact amount that was authorized, but in the nature of $5 million, Your Honor. The resettlement agreements specifically included an attorney's fees provision. The state fund opposed the reasonableness of the fees, and Judge Kearney largely agreed with the Zacks defendants that the fees were included. Does it include fees on appeal? The fees do continue to accrue on appeal, and we will have to, assuming we do have to. So if you're successful, you could go back to Judge Kearney and try to get your fees for this appeal? We understand that under the applicable law, we may either bring that motion to this court or to Judge Kearney. I think we've largely covered the important issues. One other thing that I'd like to note is they argue that Mr. Roth settled without authority. Mr. Roth was a 20-year veteran. He was the most senior lawyer in the special litigation unit. This litigation was his baby. They have cited no evidence that Mr. Roth was ever provided any written instructions regarding his settlement authority, and what he stated consistently afterward was that he felt he had the authority. There obviously were some turf wars going on, and some people didn't like what he did, but he felt that he had the authority and that he was doing what was in state funds' best interests. All that matters for you is that he appeared to have the authority, though, isn't it? Precisely, Your Honor, and he sent us an email on October 6th. So you don't need to win on whether he really had the authority? You're correct. For connivance, they would need to have evidence that we knew he lacked authority, and there's no evidence in the record that the Zacks defendants had any idea that he might lack authority. In fact, his email said that he had obtained authority to settle on, and then he provided an outline of settlement terms in his email of October 6th, 2009, which was the framework for the final settlement. When they met on October 9th, they put his email on a screen, and that was the framework for the negotiations. Wasn't there something I'm maybe misremembering that he suggested that, well, he didn't have authority to settle globally, so it would have to be done on an individual claim-by-claim basis? Correct. In late August of 2009, he had made some comment to Mr. Silverman that he was having management authority issues because of the claims being in the millions, and Mr. Silverman responded in an email on September 1 and said, well, what if we go through the claims and address them on a principled basis, on a claim-by-claim basis? And Mr. Silverman said, I assume that would address any management authority issues. Later on October 6th, Mr. Roth comes back with an email stating, I have obtained authority to proceed with the following. That's all the Zacks defendants knew. What's interesting also is the very day after the settle, the very first business day after the original settlement memorandum was executed. So we're back in October of 2009. They have a meeting on a Friday. They agree to settle. The very following Monday, two attorneys for the Zacks defendants call their counterparts at State Fund to start implementing the settlement. One of them is referenced in the papers. It is a call from Patrick Kristoff to a guy named Bob Wilson, who is in charge of ambulatory surgery centers and the comprehensive claims. He calls him and says, hey, we have a deal. Let's get it done. At the same time or the same day, Steve Silverman, the other lawyer for the Zacks defendants, contacts another lawyer at State Fund who's in charge of group or bulk settlements. So this is uncontroverted. If you look at ER 5044, you'll see the sun and shine chronology, the chronology they prepared based on their investigation, which references both and documents both of those calls. So if this claim, State Fund's claim depends on you believing or a reasonable jury believing that the Zacks defendants were so cunning and so careful that they were able to engage in a secret conspiracy with Ms. Roth without creating a shred of evidence, not a single record. Literally everything was hidden. But at the same time, they were so stupid that the day after they got the deal done, they started calling State Fund and telling them about it. It's just the whole thing makes no sense. It never did, and Judge Kearney did the right thing in putting this case finally to bed, and we respectfully submit that the court should affirm the district court's judgment. Any other questions? No. Thank you.  Thank you, Your Honor. I'd like to submit that the complaint itself could be interpreted as providing notice, not only of rescission, but also of an offer to put the parties back to the status quo. I would also like to note that all the questions of fact that the counsel has just discussed are disputed questions of fact. Judge Kearney unfortunately cited often to their uncontested statements of fact, but in fact I would look them up if they were disputed. So California law says that if you're seeking rescission, you have to take these steps. Do you have any California authority that says that a complaint that just seeks rescission impliedly takes the other steps? We do have California authority that the complaint itself provides notice, and I would submit that that notice also provides the offer to place parties back into the status quo. And you submit that, but do you have authority? Can you point me to a case that says that? I wouldn't be able to do so just now. I would also note that they have played rather fast and loose with the facts as they present them, that in fact Mr. Silverman had known another attorney was handling these matters, therefore it was their obligation to bring that attorney in to the matter, and otherwise they were concealing this from them. But all of these are questions of fact, Your Honor. The legal standard is not each element or each fact to be determined whether it's more likely than not. Rather, it should be by preponderance of the evidence, which is exactly what Anderson v. Liberty Lobby stated. It said for run-of-the-mill civil cases where preponderance of the evidence is the standard, burden of proof, the question is whether reasonable juries could bring a verdict for plaintiff. And I would submit that there is sufficient evidence to do so. Thank you, Your Honor. Thank you, Counsel. A question by my colleague. We thank all counsel for their argument in this case. The case just argued is submitted.
judges: M. Smith, Friedland, Rakoff